UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| FLEURCHEM, INC., on behalf of itself and all others similarly situated, | ) **06 0706** |
| | ) Case No.: |
| Plaintiff, | ) |
| | ) **CLASS ACTION COMPLAINT FOR** |
| v. | ) **DAMAGES AND INJUNCTIVE RELIEF** |
| | ) |
| BRITISH AIRWAYS, AIR FRANCE-KLM, | ) **JURY TRIAL DEMANDED** |
| LUFTHANSA, JAPAN AIRLINES CORP., | ) |
| KOREAN AIR CO., ASIANA AIRLINES | ) **FILED** |
| INC., CATHAY PACIFIC AIRWAYS, | ) IN CLERK'S OFFICE |
| UNITED AIRLINES INC., SCANDINAVIAN | ) U.S. DISTRICT COURT E.D.N.Y |
| AIRLINES SYSTEMS, AND JOHN DOES I- | ) AMON. J ★ FEB 1 7 2006 ★ |
| X, | ) GORENELSKY, M.J. |
| | ) BROOKLYN OFFICE |
| Defendants. | ) |
| | ) |

Plaintiff Fleurchem, Inc. ("Fleurchem" or "Plaintiff"), on behalf of itself and all others

similarly situated, brings this action under the federal antitrust laws, Section 1 of the Sherman

Antitrust Act of 1890, 15 U.S.C. § 1 ("Sherman Act") and Section 4 of the Clayton Antitrust Act

of 1914, 15 U.S.C. § 15 ("Clayton Act"), and makes the following allegations on information

and belief, except as to those paragraphs that pertain to Plaintiff, which are based upon personal

knowledge. Plaintiff's information and belief are based on, *inter alia*, the investigation made by

its attorneys.

### NATURE OF CLAIM, JURISDICTION AND VENUE

1.      This action arises under Section 1 of the Sherman Act and Section 4 of the

Clayton Act.

2.      Jurisdiction of this Court is founded on Section 15 of the Sherman Act, 15 U.S.C.

§ 15, for violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 4 of the Clayton

Act, 15 U.S.C. § 15, and 28 U.S.C. §§ 1331, 1337.

3.    Venue as to Defendants (set forth below) is proper in the Eastern District of New York, pursuant to Sections 15(a) and 22 of the Sherman Act, and 28 U.S.C. § 1391(b), (c), because Defendants are found and transact business in the Eastern District of New York and/or the claims arose at least in part in the Eastern District of New York. Defendants regularly and continuously conduct business in interstate and foreign commerce between and among the several United States and foreign countries. The interstate trade and commerce described herein has been carried out, in part, within the Eastern District of New York.

## PARTIES

4.    Plaintiff Fleurchem, Inc. is a corporation organized and existing under the laws of the State of New York and has its principal place of business at 33 Sprague Avenue, Middletown, NY 10940. Plaintiff purchased Air Cargo Services from Defendant British Airways during the Class Period (defined herein), and was damaged as a result of Defendants' unlawful conduct.

5.    Defendant British Airways has its principal place of business in Harmondsworth, Middlesex, England. It has offices throughout the United States, including at 75-20 Astoria Blvd., Jackson Heights, NY.

6.    Defendant Air France-KLM has its principal place of business in Amsterdam, Netherlands. Air France-KLM consists of two companies, Air France and KLM, that merged their operations in the year 2005. Air France-KLM ships to hundreds of destinations, including to multiple locations in the United States, including this district. It has an office in this district, at Cargo Bldg 9, 2nd Floor, Room 275, North Service Road, JFK International Airport, Jamaica, NY.

7.    Defendant Lufthansa is based in Cologne and Bonn, Germany, with offices

2

throughout the United States, including at John F. Kennedy Airport, Building 23, North Service Road, Cargo Area B, Jamaica, NY. In May 2005, it reported $40 million in first quarter revenues from fuel surcharges.

8.      Defendant Cathay Pacific Airways is located at Hong Kong International Airport, 7/F North Tower, 8 Scenic Road, Cathay City, Lantau, Hong Kong. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

9.      Defendant Korean Air Co. is located at KAL Building 1370, Gonghang-dong, Gangseo-gu, Seoul, South Korea. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

10.     Defendant Asiana Airlines Inc. is located at Asiana Town Kangseo, P.O. Box 98 #47, Osae-Dong, Kangseo-Ku, Seoul, South Korea. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

11.     Defendant United Airlines Inc. has its principal place of business at 1200 E. Algonquin Rd., Elk Grove Township, IL, 60007. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

12.     Defendant Scandinavian Airline Systems ("SAS") is located at Frosundaviks Alle 1, SE-195 87 Stockholm, Sweden. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

13.     Defendant Japan Airlines Corp. is located at 4-11, Higashi-shinagawa 2-chome, Shinagawa-ku, Tokyo 140-8637 Japan. It ships to hundreds of destinations, including to multiple locations in the United States, including this district.

## UNNAMED CO-CONSPIRATORS

14.     On information and belief, other air cargo carriers, John Does I-X, are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, adhered to, participated in, and/or communicated with others regarding the conspiracy. These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade. On February 14, 2006, United States Department of Justice ("DOJ") officials stated that raids had taken place in multiple airlines' offices in Chicago, Miami, San Francisco and Long Beach, California, but did not name specific airlines it had raided in those locations.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action under Rules 23(a), (b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf itself and others similarly situated. The "Class" is defined as:

> all purchasers of shipping services by air cargo carriers ("Air Cargo Services") from Defendants and their co-conspirators (the "Class"), at any time from at least as far back as January 1, 2000 to the present (the "Class Period"), the exact date being unknown. Excluded from the Class are Defendants, any subsidiaries or affiliates of Defendants, and any of Defendants' co-conspirators, whether or not named as a Defendant in this Complaint.

16.     The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade of the commerce involved, Plaintiff believes that the members of the Class are geographically dispersed throughout the world, including the United States, and that joinder of all Class members would be impracticable. While the exact number of Class members is unknown to Plaintiff at this time, Plaintiff believes that there are, at least, thousands of members

of the Class and that their identities can be learned from Defendants' and their co-conspirators' books and records.

17.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and all members of the Class purchased Air Cargo Services at artificially maintained, non-competitive prices established by the actions of Defendants and their unnamed co-conspirators in connection with the restraint of trade alleged herein. Plaintiff and the members of the Class have all sustained damage in that they paid inflated prices for the transportation services at issue due to Defendants' conduct in violation of federal law as complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class action and antitrust litigation.

19.    Common questions of law and fact exist as to all members of the Class which predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

> (a)    Whether Defendants conspired, contracted or combined with others, for the purpose of and with the effect of raising, fixing, maintaining, pegging, or stabilizing the price of Air Cargo Services which were purchased by the Class;
>
> (b)    Whether Defendants undertook actions to conceal the unlawful conspiracies, contracts or combinations described herein and;
>
> (c)    Whether Defendants' conduct violated the relevant federal antitrust laws and caused injury to the business and property of Plaintiff and the Class and, if so, the proper measure of damages.

5

20.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and Defendants, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort and expense, and would assure uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

21.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The amounts at stake for Class members, while substantial in the aggregate, are not great enough individually to enable them to maintain separate suits against Defendants. Plaintiff does not anticipate any difficulty in the management of this action as a class action.

## INTERSTATE TRADE AND COMMERCE

22.     During the Class Period, Defendants were prominent companies in the Air Cargo Services industry.

23.     The global market for Air Cargo Services is estimated at $50 billion. U.S. aircraft maker Boeing Co. estimates that the market will grow an average of 6.2 percent annually over the next two decades, faster than that for passenger air traffic. The New York Customs District measured total air cargo for the past two months at 323,000 metric tons.

6

24.     Throughout the Class Period, there has been a continuous and uninterrupted flow of transactions and shipments in Air Cargo Services in interstate and international commerce throughout the United States and the world.

25.     The unlawful activities of Defendants and the unnamed co-conspirators have been within the flow of, and have had a direct, substantial, and reasonably foreseeable effect on interstate and international commerce.

## FACTS

26.     Commencing on or around January 1, 2000, the exact date being unknown, Defendants conspired, contracted or combined amongst themselves and with others, for the purpose of and with the effect of raising, fixing, pegging, maintaining or stabilizing the price of surcharges for Air Cargo Services ("Air Cargo Surcharges") purchased by the Class.

27.     Defendants are among the largest providers of Air Cargo Services in the United States and in the world. These companies carry products, commodities and other goods on worldwide air routes for individual and business customers.

28.     On or about July 4, 2005, Defendant Lufthansa and others announced increases in their fuel surcharges. In addition, the surcharges were raised to similar levels, at 45 cents per kilogram.

29.     On or about August 31, 2005, several Defendants raised their fuel surcharges, including British Airways, Lufthansa, and Air France.

30.     On February 14, 2006, the European Commission ("EC") announced that, in conjunction with the DOJ, it had raided the offices of Defendants and others, seeking evidence of a price-fixing cartel. A spokesperson for the DOJ stated that the office was "investigating the possibility of anticompetitive practices in the air cargo industry," and that its inquiry was

"industry-wide." The EC said in a statement, "The Commission has reason to believe that the companies concerned may have violated [a European Union] treaty, which prohibits practices such as price fixing." On February 16, 2006, the Swiss competition authority Weko stated that it had initiated its own investigation into price-fixing in the Air Cargo Services industry.

31.     On February 14, 2006, Defendant British Airways issued a statement that it had received requests for information from the EC and the DOJ. Federal Bureau of Investigation agents raided British Airways' offices at John F. Kennedy Airport in New York, confiscating computers and seizing documents.  British Airways also stated that its offices at Heathrow airport in London were raided by U.K. antitrust officials.

32.     Defendant Air France-KLM confirmed on February 15, 2006 that EC officials had raided its offices in Paris.

33.     Defendant Japan Airlines Corp., Asia's biggest airline, admitted the EC authorities had raided its offices in Frankfurt, Germany.

34.     Defendants Korean Air Co. and Asiana Airlines Inc. ("Asiana") issued statements that their South Korean offices were raided by South Korea's Fair Trade Commission. Korean Air Co. is the world's top cargo carrier among airlines. Asiana stated that the raid concerned fuel surcharges and price-fixing practices.

35.     Defendant Cathay Pacific Airways stated that EC and DOJ officials had raided its offices in Frankfurt, Germany, Los Angeles, and San Francisco.

36.     Defendant United Airlines Inc. also confirmed that EC investigators raided its offices in Frankfurt, Germany.

37.     Defendant Scandinavian Airlines Systems ("SAS") confirmed that its offices in Stockholm, Sweden had been raided, in connection with surcharges for fuel and security

measures imposed after September 11, 2001, and "war-risk" surcharges imposed after the U.S.-led invasion of Iraq in 2003, but it stated that the activity had been going on since before then, in the year 2000.

38.     A spokesman for the Freight Transport Association, a British air freight policy group, stated, "Shippers have long since identified and been concerned by the application of very similar levels of surcharges applied by different airlines, in respect of fuel price increases, new security measures and other factors."

39.     Nicolette van der Jagt, secretary general of the European Shippers' Council ("ESC"), a trade and lobbying group, noted that there was a uniformity of prices in surcharges among Air Cargo Services providers. "This raises suspicion and doesn't help build customer confidence." She stated that carriers did not distinguish between long-haul and short-haul fights in their imposition of fees, even though the fuel costs differed based on the length of the flights. She also suggested that in spite of the fact that many carriers engaged in hedging strategies to lock in the cost of fuel over long periods of time, they imposed surcharges that went up during the period of their hedging. The ESC has also complained that the fees lack transparency, and that the fees sometimes even exceeded total transport costs.

### ALLEGATION OF ANTITRUST INJURY
### TO PLAINTIFF AND THE CLASS

40.     The combination and conspiracy alleged herein had and is having the following effects, among others:

(a)   Prices charged to Plaintiff and the Class for Air Cargo Services have been fixed or stabilized at higher, artificially derived, non-competitive levels;

(b)   Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Air Cargo Services; and

9

(c)   competition in establishing the prices paid in the United States and

worldwide for Air Cargo Services has been unlawfully restrained, suppressed and eliminated.

41.   By reason of the violations of Section 1 of the Sherman Act and Section 4 of the

Clayton Act, Plaintiff and the members of the Class have sustained injury to their business or

property.  The injury sustained by the Plaintiff and the Class is the payment of supercompetitive

prices for Air Cargo Services as a result of Defendants' illegal contract, combination, and

conspiracy to restrain trade as alleged.   This is an antitrust injury of the type that the federal laws

were meant to punish and prevent.

## FRAUDULENT CONCEALMENT

42.   Defendants fraudulently concealed their participation in the conspiracy alleged

herein by, *inter alia*, engaging in secret meetings and communications in furtherance of the

conspiracy, and by holding themselves out as competitors to the public, to Plaintiff, and to the

Class.  Because of such fraudulent concealment, Plaintiff and the Class could not have

discovered the existence of this conspiracy any earlier than its public disclosure.

## COUNT I

## VIOLATION OF SECTION 1 OF THE SHERMAN
## ACT AND § 4 OF THE CLAYTON ACT

43.   Plaintiff incorporates by reference the allegations in the above paragraphs as if fully

set forth herein.

44.   Defendants and the unnamed co-conspirators entered into and engaged in a contract,

combination or conspiracy in unreasonable restraint of trade in violation of Section 1 of the

Sherman Act and Section 4 of the Clayton Act.

10

45. The contract, combination or conspiracy has resulted in an agreement, understanding or concerted action between and among Defendants and the co-conspirators in furtherance of which Defendants fixed, maintained, and standardized prices for Air Cargo Services. Such contract, combination, or conspiracy constitutes a *per se* violation of the federal antitrust laws and is, in any event, an unreasonable and unlawful restraint of trade.

46. Defendants' contract, combination, agreement, understanding or concerted action with the co-conspirators occurred in or affected interstate and international commerce. Defendants' unlawful conduct was through mutual understandings or agreements by, between and among Defendants and the co-conspirators. These other co-conspirators have either acted willingly or, due to coercion, unwillingly in furtherance of the unlawful restraint of trade alleged herein.

47. The contract, combination or conspiracy has had the following effects:

(a) Prices charged to Plaintiff and the Class for Air Cargo Services were fixed or stabilized at higher, artificially derived, non-competitive levels;

(b) Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for Air Cargo Services; and

(c) competition in establishing the prices paid, customers of, and territories for transportation services of Air Cargo Services has been unlawfully restrained, suppressed and eliminated.

48. As a proximate result of Defendants' unlawful conduct, Plaintiff and the Class have suffered injury in that they have paid supercompetitive prices for Air Cargo Services.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(1)    That the Court determine that this action may be maintained as a class action under Rules 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be denominated as class representative and Plaintiff's counsel be appointed as counsel for the Class;

(2)    That the unlawful contract, combination and conspiracy alleged in Count I be adjudged and decreed to be an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

(3)    That Plaintiff and the Class recover compensatory damages, as provided by law, determined to have been sustained as to each of them, and that judgment be entered against Defendants on behalf of Plaintiff and each and every member of the Class;

(4)    That Plaintiff and the Class recover treble damages, as provided by law;

(5)    That Plaintiff and the Class recover their costs of the suit, including attorney's fees, as provided by law; and

12

    (6)    For such further relief as the Court may deem just and proper.

Dated: New York, NY
       February 16, 2006

By: _Barbara Hart_

LABATON SUCHAROW & RUDOFF LLP
Barbara J. Hart (BH-3231)
Bernard Persky (BP-1072)
Craig L. Briskin (CB-1285)
100 Park Avenue
New York, New York 10017-5563
Telephone: (212) 907-0700
Fax: (212) 818-0477

13