| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | <u>ONLINE PUBLICATION ONLY</u> |

| | |
|---|---|
| IN RE:<br><br>AIR CARGO SHIPPING SERVICES<br>ANTITRUST LITIGATION<br><br>MDL No. 1775<br><br>THIS DOCUMENT RELATES TO:<br><br>ALL CASES | MEMORANDUM<br><u>AND ORDER</u><br><br>06-MD-1775 (JG) (VVP) |

JOHN GLEESON, United States District Judge:

        This multi-district putative antitrust class action stems from an investigation by governmental authorities of world-wide price-fixing activity in the air cargo industry. Defendants are domestic and foreign airlines that provide airfreight shipping services around the world. Plaintiffs are direct and indirect domestic and foreign purchasers of the allegedly price-fixed airfreight shipping services.

        This is the third wave of settlement agreements placed before me for final approval in this case. I have thus far granted final approval of settlements with nine defendants and two interim fee awards. *See In re Air Cargo Shipping Servs. Antitrust Litig. ("Air Cargo 1")*, No. 06-MD-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009);[1] *In re Air Cargo Shipping Servs. Antitrust Litig. ("Air Cargo 2")*, No. 06-MD-1775, 2011 WL 2909162 (E.D.N.Y. July 15,

---

[1] In *Air Cargo 1*, I approved a settlement agreement with Deutsche Lufthansa AG, Lufthansa Cargo AG, and Swiss International Air Lines Ltd. (collectively "Lufthansa"). I subsequently applied the reasoning of my *Air Cargo 1* decision to grant final approval of settlements with Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Martinair Holland N.V. (collectively, "Air France-KLM") (ECF No. 1414); AMR Corp. and American Airlines, Inc. (collectively, "American") (ECF No. 1413); Japan Airlines International Co., Ltd. ("JAL") (ECF No. 1417); and Scandinavian Airlines System and SAS Cargo Group A/S (collectively, "SAS") (ECF No. 1416).

2011).[2]  Plaintiffs here seek final approval of nine more settlement agreements, eight with air carrier defendants and one with an employee of an air carrier defendant (ECF No. 1719).  I here apply the same principles of *Air Cargo 1* and *Air Cargo 2* to conclude that these settlements should be approved.

Plaintiffs also seek approval of their proposed plan of allocation (ECF No. 1720), as well as an interim fee award of roughly 25% of the gross settlement proceeds obtained since the last fee award on July 15, 2011 (ECF No. 1717).  *See Air Cargo 2*, 2011 WL 2909162.  I approve the proposed plan of allocation, and, with the exception of the request for an award of $1 million for future litigation expenses, which is denied, I grant the request for an interim fee award and award $54,415,069.18 in attorneys' fees and $2,098,350.09 in unreimbursed expenses.

BACKGROUND

A.   *The Settlements*

The plaintiffs seek final approval of settlements (the "Third Settlements") with nine defendants: (1) Lan Airlines, S.A., Lan Cargo, S.A., and Aerolinhas Brasileiras, S.A. (collectively, "Lan"); (2) British Airways plc ("British Airways"); (3) South African Airways Ltd. ("South African"); (4) Malaysia Airlines ("Malaysia"); (5) Saudia Arabian Airlines, Ltd ("Saudia"); (6) Emirates Airline d/b/a Emirates ("Emirates"); (7) El Al Israel Airlines Ltd. ("El Al"); (8) Air Canada and AC Cargo LP (collectively, "Air Canada"); and (9) Salvatore Sanfilippo, who is a managerial employee of defendant Air New Zealand ("ANZ").

---

[2]   In *Air Cargo 2*, I approved settlements with All Nippon Airways Co., Ltd. ("ANA"), Cargolux Airlines International S.A. ("Cargolux"), Qantas Airways Limited ("Qantas"), and Thai Airways International Public Company Limited ("Thai").  *See also* Order dated 8/4/2011 (granting final approval to Qantas settlement).

1. *The Terms of Each Settling Defendant's Agreement To Settle*

  a. *Lan*

Under its settlement agreement, Lan has paid $66 million, representing 3.23% of its relevant sales during the class period. Lan has also agreed to pay to $150,000 for notice costs and to provide extensive cooperation to the class to aid the class in its claims against the remaining non-settling defendants. The Lan settlement provides for an opt-out escrow account, into which funds representing opt-outs' proportional share of the settlement funds will be deposited, some or all of which will be potentially returned to Lan upon resolution of the opt-outs' individual claims.

  b. *British Airways*

Under its settlement agreement, British Airways has paid $89.512 million, representing 3.3% of its relevant sales during the class period. It has also agreed to pay up to $500,000 for notice costs, and to provide extensive cooperation. The British Airways settlement provides for an opt-out escrow account similar to Lan's.

  c. *South African*

South African has paid $3.29 million, representing 3.5% of its relevant sales during the class period. No portion of the funds will revert to South African, regardless of whether there are opt-outs. South African has also agreed to provide cooperation.

  d. *Malaysia*

Malaysia has paid $3.2 million, representing 3.7% of its relevant sales during the class period. No portion of the fund will revert to Malaysia, regardless of whether there are opt-outs. Malaysia has also agreed to provide cooperation.

e.     *Saudia*

Saudia has paid $14 million, representing 3.7% of its relevant sales during the class period.  No portion of the fund will revert to Saudia, regardless of whether there are opt-outs.  Saudia has also agreed to provide cooperation.

f.     *Emirates*

Emirates has paid $7.833 million, representing 3.7% of its relevant sales during the class period.  No portion of the fund will revert to Emirates, regardless of whether there are opt-outs.  Emirates has also agreed to provide cooperation.

g.     *El Al*

El Al has agreed to pay a total of $15.8 million, representing 3.7% of its relevant sales during the class period.  The settlement agreement provides that El Al will pay the settlement amount in six installment payments.  To date, El Al has paid $9.8 million.  The remainder will be paid in five equal installment payments of $1.2 million each, with its last payment being made on or before December 31, 2016.  No portion of the fund will revert to El Al, regardless of whether there are opt-outs.  El Al has also agreed to provide cooperation.[3]

h.     *Air Canada*

Air Canada has paid $7.5 million, representing 3.7% of its relevant sales during the class period after its discharge from bankruptcy, and 0.5% of its relevant sales during the class period prior to its discharge from bankruptcy.  No portion of the fund will revert to Air Canada, regardless of whether there are opt-outs.  Air Canada has also agreed to provide cooperation.

---

[3]     El Al's agreement permits either party to rescind the agreement if the sales amounts of the opt-outs exceeded an unspecified agreed-upon amount.  Class counsel informed the court at oral argument that the sales volume of the opt-outs from the settlement had not exceeded that threshold.

4

      i.  *Sanfilippo*

  Sanfilippo's settlement agreement provides for only cooperation. Class counsel believes Sanfilippo's cooperation is important because he was ANZ's regional manager for North America with responsibility for implementing surcharges for ANZ shipments out of the United States, and, accordingly, he is a percipient witness to the charged conspiracy.

    2.  *The Releases*

  All of the settlement agreements include a release. In substance, it releases the settling defendants from all claims by settlement class members relating to airfreight shipping services to, from, or within the United States which arise under antitrust, unfair competition, unfair practices, price discrimination, or other laws, except there is no release of any claims involving negligence, breach of contract, bailment, failure to deliver, lost goods, damaged or delayed goods or similar claims.

    3.  *Objections and Opt-Outs*

  By Order dated March 14, 2012, I authorized a notice procedure that required written objections to the Third Settlements to be filed with the court on or before July 6, 2012. ECF No. 1661. None was filed. In addition, no oral objections to the settlements were voiced at the fairness hearing held on July 27, 2012.

  Any class member wishing to opt out of any settlement was to postmark its request by June 1, 2012. Class counsel represented to the court that it received 22 opt-out requests[4] from a class comprising at least tens of thousands of class members. According to class counsel, this is the fewest opt-outs of any of the three rounds of settlements in this case.

---

[4] Of those opt-outs, apparently 21 were timely. Analytik Jena AG also submitted an exclusion request, but the timeliness of its request is in dispute. *See* ECF No. 1719-3. I hereby conclude that Analytik Jena AG made a good-faith attempt to opt out before the deadline, and moreover there is no cognizable prejudice to the

5

B.      *The Plan of Allocation*

Under the proposed plan of allocation, the settlement funds, less any reductions for exclusions and after deductions for attorneys' fees and expenses approved by the court, shall be distributed to class members that submit valid claim forms in proportion to their relevant purchases from defendants of "Airfreight Shipping Services." Purchases of Airfreight Shipping Services for shipments into the United States will be valued at 1.625 times the dollar amount of such purchases; purchases of Airfreight Shipping Services for shipments out of the United States will be valued at the dollar amount of such purchases. This proposed plan of allocation was described in the settlement notice that was mailed directly to class members, published in industry publications, and posted on the settlement website.

C.      *Fee Award Request*

Class counsel seeks an interim fee award of $54,415,069.18,[5] representing 25% of the gross settlements funds received since the last fee award, less applicable opt-out reductions, plus another 20% from two opt-out escrow accounts. In addition, class counsel seeks reimbursement of $2,098,350.09 in expenses, and an additional $1 million for future litigation expenses.

The Third Settlements will produce a total recovery (after reduction for opt-outs) of $183,432,485.76 ("Third Settlement Fund"). *See* Corrected Ex. B to ECF No. 1717-2 (provided at oral argument). In addition, the plaintiffs have received supplemental monies from

---

settling defendants in permitting Analytik Jena AG to opt out, despite the timing of the actual receipt of its request. Accordingly, I conclude that Analytik Jena AG is appropriately excluded from the settling class.

[5] There is some inconsistency across class counsel's submissions. Its memorandum in support of an interim fee award requests $54,432,911.47 in fees. However, class counsel apparently modified some of the figures in a "Corrected" Exhibit B to the memorandum that it presented to the court at oral argument. Because of this disparity, I have computed the fee request based on the percentages requested and the figures provided in the Corrected Exhibit B provided to the court at oral argument. Regardless, class counsel is instructed to limit its fee award to the amount produced by the methodology presented to the court in its papers and at oral argument.

previously settling defendants totaling $15,265,779.55 ("Supplemental Settlement Fund"),[6] from which no fees have yet been paid. This results in a total settlement fund of $198,698,265.31, of which class counsel requests a fee award representing 25%, or $49,674,566.33. Class counsel also requests 20% of two opt-out escrow accounts which the British Airways and Lan settlements designated for use as attorneys' fees. Class counsel estimates the value of those accounts at $23,702,514.24, of which 20% is $4,740,502.85. Thus, class counsel requests a total fee award of $54,415,069.18.

Class counsel represents that this award represents a multiplier of 1.11 of the lodestar, using a lodestar cross-check period of December 6, 2006, through December 31, 2011,[7] excluding all work performed on the Lufthansa settlement.[8]

I have previously awarded two interim fee awards in this case. In the first, in connection with the Lufthansa Settlement, I awarded attorneys' fees in the amount of $12,750,000, and expenses in the amount of $1,572,100.94. *See Air Cargo 1*, 2009 WL 3077396. The attorney fee award represented 15% of the Lufthansa settlement fund, and a multiplier of 1.5 (or, in other words, 150%) of the lodestar of work performed on the Lufthansa settlement. *Id.* In the second interim fee award in this case, awarded in connection with the *Air Cargo 2* settlements, I approved an award of attorneys' fees in the amount of $38,458,330, and expenses in the amount of $3,251,477.10. The attorney fee award represented 25% of the settlement fund comprised of the gross amount of the eight settlements obtained since the Lufthansa settlement, less applicable opt-out reductions. It constituted approximately 63% (or a

---

[6] Supplemental funds were received from SAS ($5,304,684.73), Cargolux ($8,134,000), and Air France ($1,827,094.82).

[7] Although the lodestar cross-check period used in *Air Cargo 2* encompassed this same time period, class counsel has added those *Air Cargo 2* fees to its total fee award in calculating the lodestar multiplier.

[8] Class counsel has already been fully compensated for the Lufthansa Settlement, for which I awarded attorneys' fees in the amount of $12,750,000, and expenses in the amount of $1,572,100.94. *See Air Cargo 1*, 2009 WL 3077396.

7

multiplier of 0.63) of the lodestar for all of the work expended by the plaintiffs from December 6, 2006, to December 31, 2010, excluding work performed on the Lufthansa settlement. *See Air Cargo 2*, 2011 WL 2909162.

## DISCUSSION

A.  *Settlement Approval*

Pursuant to Federal Rule of Civil Procedure 23(e), a court may grant approval of a proposed settlement of a class action if the settlement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). The court examines both the procedural and substantive fairness of the settlement. *Air Cargo 2*, 2011 WL 2909162, at *3.

I hereby grant final approval of the Third Settlements pursuant to Fed. R. Civ. P. 23(e) because I find the agreements to be "fair, reasonable and adequate" to the class. In reaching this conclusion, I have considered all of the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and incorporate the reasoning and conclusions set forth in my previous opinions approving settlements in this case, which I find to apply with equal or greater force to the Third Settlements.

B.  *The Plan of Allocation*

The purpose of developing a plan of allocation is to devise a method that permits the equitable distribution of limited settlement proceeds to eligible class members. *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316-17 (E.D.N.Y. 2006); *cf. Beecher v. Able*, 75 F.2d 1010, 1016 (2d Cir. 1978). The adequacy of an allocation plan turns on whether the proposed apportionment is fair and reasonable under the particular circumstances of the case. *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721

(2d Cir. 1997). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (quotation marks omitted).

        I find that the plan of allocation proposed by class counsel is both fair and reasonable, and thus I approve it. The plan is substantially the same as the plans I approved in *Air Cargo 1* and *Air Cargo 2*, the reasoning of which apply here. Moreover, no class member has objected to the plan, strongly suggesting it is fair and reasonable. I approve it.

C.      *Fee Award*

        Fee awards should be reasonable under the circumstances. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Whether the court awards a percentage of the overall fund or calculates a lodestar by multiplying a reasonably hourly rate by a reasonable number of hours expended, the factors for evaluating the reasonableness of a common fund fee include "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (internal quotation marks and alterations omitted).

        For the reasons I set forth in my opinions in *Air Cargo 1* and *Air Cargo 2*, I find class counsel's requested fee award, representing a reasonably modest 1.11 multiplier of the lodestar, to be reasonable under the circumstances. Accordingly, class counsel is hereby granted a fee award of 25% of the gross amount of the settlement fund received since the last fee award, less applicable opt-out reductions, plus 20% of the British Airways and Lan opt-out escrow accounts. Based on class counsel's estimates, this fee award will amount to $54,415,069.18.

However, class counsel is cautioned that this method of computing fees may need to be revisited in the future. In megafund cases such as this one, courts typically decrease the percentage of the fee as the size of the fund increases to avoid an unjust windfall. *Goldberger*, 209 F.3d at 52; *Air Cargo 1*, 2009 WL 3077396, at *15; *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 521 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005). Recognizing that "[i]n many instances the increase [in the fund] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel," *In re Nasdaq Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y.1998), courts faced with megafund cases have "traditionally accounted for these economies of scale by awarding fees in the lower range[s]." *Goldberger*, 209 F.3d at 52; *see also In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689, 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) ("[T]he percentage used in calculating any given fee award must follow a sliding-scale and must bear an inverse relationship to the amount of the settlement. Otherwise, those law firms who obtain huge settlements, whether by happenstance or skill, will be over-compensated to the detriment of the class members they represent."); *In re NASDAQ*, 187 F.R.D. at 486 (explaining that "absent unusual circumstances, the percentage will decrease as the size of the fund increases" and thus "[i]n cases where a class recovers more than $75-$200 million . . . fees in the range of 6-10 percent and even lower are common" (quotation marks omitted)). This traditional percentage reduction may affect any future fee requests; that is, I will not refrain from considering it simply because there have been a series of interim fee awards in the case.

I award class counsel the requested reimbursement of $2,098,350.09 for unreimbursed expenses. However, the request for an additional $1 million to fund future litigation expenses is denied.

10

CONCLUSION

The Third Settlements and the plan of allocation are approved. Class counsel is awarded from the settlement funds fees of $54,415,069.18 and expenses of $2,098,350.09.

So ordered.


John Gleeson, U.S.D.J.


Dated: August 2, 2012
       Brooklyn, New York