UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK

IN RE:

AIR CARGO SHIPPING SERVICES     MEMORANDUM
ANTITRUST LITIGATION            AND ORDER

MDL No. 1775                    06-MD-1775 (JG) (VVP)

THIS DOCUMENT RELATES TO:

ALL CASES

JOHN GLEESON, United States District Judge:

  This multi-district putative antitrust class action stems from an investigation by governmental authorities of worldwide price-fixing in the air cargo industry. Defendants are domestic and foreign airlines that provide airfreight shipping services around the world. Plaintiffs are direct purchasers of allegedly price-fixed airfreight shipping services from defendants.

  This is the fourth installment of proposed settlements ("*Air Cargo 4*").[1] Plaintiffs seek final approval of four settlement agreements with the following defendants: (1) Korean Air

---

[1] I have previously approved settlements with eighteen defendants in this case. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) (the Lufthansa Settlement with Deutsche Lufthansa AG, Lufthansa Cargo, and Swiss International Air Lines, Ltd. for $85 million) ("*Air Cargo 1*"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2011 WL 2909162 (E.D.N.Y. July 15, 2011) (the Air France-KLM Settlement with Société Air France, Koninklijke Luchtvaart Maatschappij N.V., and Martinair Holland N.V. for $87 million; the American Settlement with AMR Corp. and American Airlines, Inc. for $5 million; the JAL Settlement with Japan Airlines International Co., Ltd. for $12 million; the SAS Settlement with Scandinavian Airlines System and SAS Cargo Group A/S for $13.93 million; the ANA Settlement with All Nippon Airways Co., Ltd. for $10.4 million; the Cargolux Settlement with Cargolux Airlines International S.A. for $35.1 million; the Qantas Settlement, with Qantas Airways Limited for $26.5 million; the Thai Settlement with Thai Airways International Public Company Limited for $3.5 million) ("*Air Cargo 2*"); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2012 WL 3138596 (E.D.N.Y. Aug. 2, 2012) ("*Air Cargo 3*") (the Lan/ABSA Settlement, under which Lan Airlines, S.A., Lan Cargo, S.A., and Aerolinhas Brasileiras, S.A. have paid

Lines Co., Ltd. ("Korean Air"); (2) Singapore Airlines Limited and Singapore Airlines Cargo PTE, Ltd. ("Singapore Air"); (3) Cathay Pacific Airways Ltd. ("Cathay Pacific") settlement; and (4) China Airlines, Ltd. ("China Air"). In addition to the substantial monetary amounts described below, the settling defendants have agreed to provide certain cooperation that will aid plaintiffs in the prosecution of their case against the remaining defendants.

Plaintiffs also seek approval of their proposed plan of allocation, as well as an interim fee award of 22% of the gross settlement proceeds obtained since the last fee award on August 2, 2012. I held a final fairness hearing on January 16, 2015, at which there was oral argument in support of the proposed settlement, allocation plan, certain incentive awards to class representatives, and the requested attorneys' fees. No one objected at the hearing and there have not been any written objections filed.

For the reasons discussed below, I approve the proposed settlement, allocation plan, and incentives awards, and I grant the request for attorneys' fees.

BACKGROUND

I assume familiarity here with the facts of the case as set forth in *Air Cargo 1* and *Air Cargo 2*. As noted above, I have granted final approval to eighteen settlements and three interim fee awards.[2] The four new settlements for which counsel seek approval are briefly summarized below.

The Korean Air Lines settlement in the amount of $115 million (to be paid in three installments) is the largest settlement amount to date. Under the agreement, Korean Air

---

$66 million; the British Airways Settlement, under which British Airways PLC has paid $89.512 million; the South African Settlement, under which South African Airways Ltd. has paid $3.29) ("*Air Cargo 3*").

[2] *See supra* note 1. The interim fee awards in *Air Cargo 1-3* were $12,750,000, $38,458,330 and $54,415,069.18, respectively.

will provide extensive cooperation to the plaintiffs in aid of their claims against the remaining defendants, including providing witnesses, authenticating documents, and meeting with counsel.

The Singapore Airlines settlement is for $92,492,442, the second largest settlement to date, less a $29,958,302 reduction for class members that settled with Singapore Airlines before the class settlement was reached, for a net fund of $62,534,140.00, plus up to $250,000 for notice costs. It, too, requires cooperation on the part of Singapore Airlines.

The Cathay Pacific settlement is in the amount of $65 million, and Cathay Pacific has also agreed to provide its cooperation.

Finally, China Airlines has agreed to settle for $90 million, plus $200,000 for notice and settlement administration costs. As part of the settlement, it has agreed to cooperate with the plaintiffs.

DISCUSSION

A. *The Standard for Approving a Proposed Settlement*

Pursuant to Federal Rule of Civil Procedure 23(e), any settlement of a class action requires court approval. A court may approve such a settlement if it is "fair, adequate, and reasonable, and not a product of collusion." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 509 (E.D.N.Y. 2003) (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). A court may not simply rubber stamp an agreement yet simultaneously it must "stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000). Moreover, judicial discretion is informed by the general policy favoring settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *see also Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005) ("There is a strong judicial policy in favor of settlements, particularly

in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (citations and internal quotation marks omitted), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006).

To evaluate whether a settlement is fair, I examine (1) the negotiations that led up to it, and (2) the substantive terms of the settlement. *See Air Cargo 2*, 2011 WL 2909162, at *3 (citing *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139, 145 (E.D.N.Y. 2000)). In evaluating procedural fairness, "[t]he [negotiation] process must be examined 'in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves.'" *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d at 145-46 (quoting *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983)). Factors relevant to the substantive fairness of a proposed settlement include: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *See Grinnell Corp.*, 495 F.2d at 463 (internal citations omitted).

B.   *The Proposed Settlements*

1.   *Procedural Fairness*

I find that the Korean Air, Singapore Air, Cathay Pacific, and China Air settlements are procedurally fair because they are the products of arm's-length negotiations

4

between experienced and able counsel.[3] The lawyers for the parties spent a great deal of time over the course of years in face-to-face, telephonic, and written negotiations. Both sides for all of the settlements vigorously negotiated their respective positions on all material terms of the settlement agreements. There is no indication that any of these settlements are the product of collusion, or that they confer upon the class representatives or any portion of the class "improper[ ] . . . preferential treatment." *In re NASDAQ Market–Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). Accordingly, I conclude that the settlement agreements were reached by good-faith negotiations that were fair, adequate, and reasonable, and that the agreements are not products of collusion. *See Joel A.*, 218 F.3d at 138.

2. *Substantive Fairness*

I also find that the settlement agreements are substantively fair. My findings here borrow heavily from those set forth in my previous opinions approving settlements in this case.

First, the complexity of federal antitrust cases is well known. *See, e.g.*, *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 263 (2d Cir. 2001) (noting the "factual complexities of antitrust cases"); *Weseley v. Spear, Leeds & Kellogg*, 711 F. Supp. 713, 719 (E.D.N.Y. 1989) (Nickerson, J.) (antitrust class actions "are notoriously complex, protracted, and bitterly fought"). In this setting, the plaintiffs had to analyze the operations and pricing of over two dozen domestic and foreign defendant air carriers and prove the existence of a worldwide price-fixing conspiracy and the damages that resulted from it. Demonstrating liability and proving damages against the large number of defendants required a significant expenditure of monetary resources, including the retention of multiple consultants, the maintenance of a massive electronic document database, and the extensive use of translators. Discovery has

---

[3] The Korean Air Settlement Agreement was also aided by a mediation proposal by Eric D. Green, an experienced mediator in such cases. *See* ECF. No 1962-2.

included the analysis of more than 18 million pages of documents and 83 depositions. Bringing the claims against the settling defendants to fruition would have required significant additional time and expense. Furthermore, based on the expertise of class counsel and the advanced stage of discovery, I find that counsel were well-informed of the facts and the strength of their claims against each of the settling defendants by the time the agreements were executed.

Due process requires that class members be given notice of a proposed settlement and an opportunity to be heard. Here, notice of the class settlement was mailed to 160,638 class members. Notably, there wasn't a single objection. The claims administrator for each settlement received fifteen requests for exclusion from the China Air settlement and sixteen requests for exclusion from the Singapore Air, Korean Air, and Cathay Pacific settlements. *See* Dec. of Jennifer M. Keough ¶ 15, ECF No. 2080-3. That the overwhelming majority of the class members have elected to remain in the settlement class supports a finding that that the settlement is fair, reasonable, and adequate. *See, e.g.*, *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003).

I also find that the settlement amounts and cooperation agreements presented here are within the range of reasonableness. The China Air, Singapore Air, and Korean Air settlements (ranging from $90 million to $115 million) are the largest settlements reached in this case by gross settlement amount and create an obvious benefit for the class. Additionally, all four of the defendants have agreed to cooperate to help the plaintiffs prosecute their claims against the remaining defendants. And though the monetary value of the agreements to cooperate with plaintiffs have not been factored into the overall value of these settlements, that value is no doubt significant. *See Air Cargo 2*, 2011 WL 2909162, at *4. I find that the

reasonableness of the settlements in light of the best possible recovery and all attendant litigation risks weighs in favor of approving the settlements.

In sum, I conclude that the proposed settlement agreements are both procedurally and substantively fair and I therefore approve them.

C.   *The Allocation Plan*

"As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable" under the particular circumstances of the case. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). And "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (citation and internal quotation marks omitted). Whether the allocation plan is equitable is "squarely within the discretion of the district court[.]" *In re PaineWebber*, 171 F.R.D. at 132.

I find that the plan of allocation proposed by class counsel is both fair and reasonable, and thus I approve it. The plan is the same as the plans I approved in *Air Cargo 2* and *Air Cargo 3*, and I see no reason to reach a different result here. Moreover, no class member has objected to the plan, strongly suggesting it is fair, reasonable and adequate to the class.

D.   *Incentive Awards*

Payments to class representatives can be properly included in class action settlements to the extent they are needed to fairly compensate the named plaintiffs for the efforts they have made on behalf of the class. *Sheppard v. Consol. Edison Co. (Sheppard I)*, No. 94-CV-403 (JG), 2000 WL 33313540, at *5 (E.D.N.Y. Dec. 21, 2000); *Sheppard v. Consol. Edison Co. (Sheppard II)*, No. 94-CV-0403 (JG), 2002 WL 2003206, at *5 (E.D.N.Y. Aug. 1,

2002) ("Such awards are not uncommon and can serve an important function in promoting class action settlements."). One consideration that counsels against incentives awards, however, is the possibility that when class representatives receive "special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of class members whose interests they are appointed to guard." *Weseley*, 711 F. Supp. at 720. This sometimes can result in proposed "incentive payments [that] are greatly disproportionate to the recovery set aside for absent class members[.]" *Sheppard II*, 2002 WL 2003206, at *6.

Courts in this circuit consider the following factors in deciding whether to approve incentive awards:

> The existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and, of course, the ultimate recovery.

*Gulino v. Symbol Tech., Inc.*, No. 06-CV-2810 (JG)(AKT), 2007 WL 3036890, at *2-3 (E.D.N.Y. Oct. 17, 2007); *see also Sheppard II*, 2002 WL 2003206, at *6 n.9 ("A powerful basis for separate awards to named plaintiffs in class action settlements is the need to reimburse them for specific expenses they have incurred, including out-of-pocket costs of asserting the litigation, the use of leave time in order to attend depositions and other such costs."). "However, although payments can be made to compensate named plaintiffs for hardships caused by the action, class representatives are fiduciaries of the absent class members, and are expected to endure the ordinary inconveniences of litigation without special compensation." *Gulino*, 2007 WL 3036890, at *3.

Class counsel seek an incentive of $90,000 for each of the six class representatives, totaling $540,000.[4] These class representatives expended a significant amount of time and incurred substantial burdens in assisting with this litigation. Counsel submitted declarations of current and former corporate officers for each of them, detailing the work that they undertook in the case. The class representatives fulfilled substantial discovery obligations, including producing large volumes of documents, responding to interrogatories and giving deposition testimony, working with counsel and their experts regarding class certification, communicating with counsel regarding settlements and filings, and monitoring the status of the case throughout the years of litigation. Furthermore, by alleging antitrust violations on behalf of themselves and the class, the class representatives conceivably put their businesses in risk of potential retaliation by air cargo suppliers.

While the case continues against a few remaining defendants, incentive awards to the class representatives who have assisted in litigating this action for nearly nine years is nonetheless appropriate. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 (BMC) (JO), 2012 WL 5289514, at *11 (E.D.N.Y. Oct. 23, 2012) (granting awards to class representatives even though the cases were not final as to all defendants); *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 470 (S.D.N.Y. 2004) (approving incentive awards for class representatives even though the case was still ongoing against several non-settling defendants). Their assistance has resulted in 23 settlements totaling over $900 million thus far. The incentive awards compensate for the hardships created by the litigation and are not so great as to constitute special compensation in light of the time and effort class representatives spent assisting with the litigation. This is particularly true here, where the proposed incentive awards

---

[4] The class representatives are Benchmark Export Services, FTS International Express, Inc., R.I.M. Logistics, Ltd., Olarte Transport Service, Inc., S.A.T. Sea & Air Transport, Inc., and Volvo Logistics AB.

include significant out-of-pocket costs incurred by the class representatives. Those expenses are always reimbursable, and they operate here to reduce the actual incentive awards to a number significantly below $90,000 for each class representative.

Finally, the incentive awards here are reasonably proportionate to the average recovery class members will receive. The proposed incentive award for each class representative ($90,000) is only 1.35 times greater than the average amount class members have received to date ($66,639). *Cf. Gulino*, 2007 WL 3036890, at *3 (denying incentive awards that were 4 times the average anticipated payment and over 13 times the median anticipated payment because they overcompensated the named plaintiffs). And the total incentive award of $540,000 represents only .06% of the total settlements in the case to date, so there is no serious concern that the payments will dwarf the average monetary recovery per class member.[5] Further, no class member has objected to the incentive awards. I thus grant the request for incentive awards.

E.  *Attorneys' Fees*

I may award attorneys' fees using either a percentage of the fund or the lodestar method.[6] *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("*Wal-Mart*"). Regardless of which method of calculation is employed, class action fee awards are evaluated for reasonableness based on the six-factor standard set forth in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47, 50 (2d Cir. 2000). Under that standard, I must weigh "(1) the time and labor expended by counsel; (2) the

---

[5] In *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 991 F. Supp. 2d 437, 448 (E.D.N.Y. 2014), I denied as unjustified proposed incentive awards that represented .03% of the $5.7 billion fund. These awards, however, would have resulted in $200,000 payments to each of the nine Class Plaintiffs, which I concluded would "no doubt dwarf the average monetary recovery per class member." *See id.*

[6] The lodestar method multiplies hours reasonably expended against a reasonable hourly rate. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In determining appropriate attorneys' fees, courts have the discretion to increase the lodestar by applying a multiplier based on factors such as the risk of the litigation and the quality of work performed by the attorneys. *Id.*

magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* at 50 (alterations in original).

Class counsel seek an interim fee award of $73,157,510, which represents 22% of the total settlement funds ($332,534,140). This award is a multiplier of 1.45 of the lodestar, using a lodestar cross-check period of December 6, 2006 through June 30, 2014, after considering the $38,458,330 in fees awarded in *Air Cargo 2* and the $54,415,069.18 in fees awarded in *Air Cargo 3*. The 22% fee award sought is a lower percentage than the fee award of 25% of the gross amount of the settlement I found reasonable in *Air Cargo 2* and *Air Cargo 3*.

I find the requested attorneys' fees are fair and reasonable, and satisfy the *Goldberger* factors. This litigation is nine years old, and counsel have spent hundreds of thousands of hours prosecuting it. The amount of time and energy spent on the litigation is directly related to factual and legal complexity of this action. "[A]ntitrust cases, by their nature, are highly complex" and this case is no different. *Wal-Mart*, 396 F.3d at 122; *see also Weseley*, 711 F. Supp. at 719 (antitrust class actions "are notoriously complex, protracted, and bitterly fought"). As for risk, as I noted in *Air Cargo 1-3*, this litigation was obviously risky. To successfully establish a price-fixing violation, plaintiffs must prove the existence of a worldwide price-fixing conspiracy and demonstrate the damages that resulted from it, measurable by reference to the prices that would have existed but for the conspiracy. This requires complex expert analysis and review of mountains of documents.

As noted in my previous decisions, class counsel are highly experienced practitioners in complex litigation generally and antitrust litigation specifically. These settlements are the result of vigorous, arm's-length negotiations with the settling defendants'

counsel. The record settlement amounts achieved during this wave of agreements further attest to class counsel's abilities. In sum, I find the proposed attorneys' fees reasonable and thus grant the request.

F.    *Expenses*

Class counsel also seek reimbursement of $5,266,384.55 in expenses incurred during the period January 1, 2012 to June 30, 2014.[7] Lawyers are generally entitled to reimbursement for reasonable out-of-pocket expenses. *See, e.g.*, *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *11 ("Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course."). I am satisfied that the expenses here are reasonable and approve the full amount requested.

## CONCLUSION

The *Air Cargo 4* Settlements, plan of allocation and incentives awards are approved. Class counsel are awarded $73,157,510 in fees and expenses of $5,266,384.55.

So ordered.


John Gleeson, U.S.D.J.

Dated: October 9, 2015
       Brooklyn, New York

---

[7]    Class counsel initially sought $5,316,384.55, but they modified the amount sought at oral argument.

12